UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUGUST PEZZENTI, JR., : | |
| INDIVIDUALLY, ET AL : | NO.: 3:03CV00419 (MRK) |
| : | |
| v. : | |
| : | |
| JOSEPH CAPALDO, ET AL : | FEBRUARY 27, 2004 |

## LOCAL RULE 56(a)(1) STATEMENT

Pursuant to Fed. R. Civ. P. 56(c) and D. Conn. L. Civ. R. 56(a)(1), the defendants, Joseph Capaldo and Michael Krupa, submit the following Statement of Material Facts Not In Dispute in support of their Motion for Summary Judgment and Memorandum of Law in support of Motion for Summary Judgment dated February 27, 2004.

1.      At all relevant times, the defendants, Joseph Capaldo and Michael Krupa were police officers employed by the Town of Canton, Connecticut. The defendants are sued only in their individual capacity. (Complaint, Counts One-Four, ¶ 4).

2.      At all relevant times, the plaintiff, August Pezzenti, Jr., was an adult citizen of the United States residing in Canton, Connecticut. (Complaint, Count Three, ¶ 3).

3.      At all relevant times, the plaintiff, Attorney John Maben, was an adult citizen of the United States residing in New Britain, Connecticut, and was an attorney admitted to practice law in the State of Connecticut. (Complaint, Count Four, ¶ 3).

1

4.      On September 12, 2002, the minor plaintiff, Anthony Pezzenti, placed a telephone call to the Canton Police Department at approximately 4:30 in the afternoon.  (Complaint, Count One, ¶ 7; Affidavit of Joseph Capaldo, copy attached as Exhibit A;).

5.      Anthony reported that his mother, Elizabeth Pezzenti, hit him in the face and threw a telephone at him.  (Exhibit A).

6.      The call was transferred to the defendant, Officer Joseph Capaldo. As a result of the telephone call, Officer Capaldo and defendant, Sergeant Michael Krupa, responded to the Pezzenti residence located at 63 Secret Lake Road to further investigate the matter.  (Exhibit A; Affidavit of Sergeant Krupa, copy attached as Exhibit B).

7.      Upon arrival at the residence at approximately 4:53 p.m., Anthony and his mother, Elizabeth Pezzenti, met the officers at the front door.  Sergeant Krupa spoke with Anthony about the incident while Officer Capaldo spoke with Mrs. Pezzenti.  (Exhibits A & B).

8.      Anthony told Sergeant Krupa that he was outside blowing leaves at his mother's request and that she did not like the direction in which he was blowing the leaves.  Mrs. Pezzenti yelled at Anthony and told him to go inside the house.  Anthony and his mom argued and she sent him to his room.  Anthony continued to argue with his mom and she slapped him, open handed, across the face.  Anthony told his mom he was going to call the police because she hit him. At that time, Mrs. Pezzenti threw the phone "toward" Anthony and the phone hit him in the mouth causing a cut to his upper lip.  Sergeant Krupa observed the cut

on Anthony's upper lip.  (Exhibit B; Deposition of Elizabeth Pezzenti, pp. 12-21, copy attached as Exhibit C).

9.  Sergeant Krupa asked Anthony about his family life and whether he got along with his parents.  Anthony told Sergeant Krupa that he sometimes got along with his parents but he gets hit all the time.  (Exhibit B; Exhibit C, p. 27.)

10.  Anthony explained that he had received a demerit at school the week before and that his father, August Pezzenti, Jr., punished him by hitting him ten times with a belt across his rear end.  (Exhibit B; Deposition of August Pezzenti, Jr., p. 87, copy attached as Exhibit D).

11.  Anthony further stated that his parents routinely hit him as a form of punishment.  Anthony broke out in tears several times during his conversation with Sergeant Krupa.  Anthony also told Sergeant Krupa that he is a "wise guy," but he does not deserve to be hit.  (Exhibit B; Exhibit C, p. 33).

12.  Mrs. Pezzenti told Officer Capaldo that the incident began when she asked Anthony to go to the back yard and clear the leaves.  Mrs. Pezzenti stated that she told Anthony to start on one side of the yard while he wanted to start at a different location.  Therefore, Mrs. Pezzenti told Anthony to go to his room.  (Exhibit A; Exhibit C, pp. 17-19).

13.  Mrs. Pezzenti told Officer Capaldo that Anthony was "being mouthy" while he was in his room and said he hated her.  Anthony told Mrs. Pezzenti, "I'm glad you had me so that I can make your life miserable." (Exhibit A; Exhibit C, p. 19).

14. Mrs. Pezzenti admitted that she slapped Anthony in the face twice with an open hand after his comment that he was glad she had him so he could make her life miserable. (Exhibit A; Exhibit C, pp. 19-21).

15. Officer Capaldo also spoke with Anthony, who told him several times that he did not want to get hit anymore. Anthony told Officer Capaldo the same version of events that he had shared with Sergeant Krupa. After Mrs. Pezzenti hit Anthony, Anthony stated that he was going to call police. Mrs. Pezzenti told Anthony to go ahead and call the police and threw the phone towards him, hitting him in the mouth and cutting his lip. Officer Capaldo also observed that Anthony's lip was freshly cut open on the inside. (Exhibit A; Exhibit C, pp. 12-23)

16. Anthony told Officer Capaldo that he is struck by one of his parents at least one time per week. He also stated that his father strikes him with a belt occasionally. When Officer Capaldo asked Anthony if he was afraid to be at home, he stated, "No, I just don't want to get hit anymore." (Exhibit A).

17. Mrs. Pezzenti told Sergeant Krupa that she had no idea what time Mr. Pezzenti would be home and that it would probably be late. (Exhibit B; Exhibit C, pp. 34-35).

18. Sergeant Krupa and Office Capaldo decided to remove Anthony from his home and take him into protective custody until the State of Connecticut Department of Children and Families ("DCF") could interview him. Officer Capaldo and Sergeant Krupa explained to Mrs. Pezzenti they would take

Anthony into protective custody until DCF had an opportunity to speak with Anthony. (Exhibits A & B; Exhibit C, p. 35).

19. Sergeant Krupa then transported Anthony to the Canton Police Department. Upon arrival at the police department, Anthony was taken into the dispatch area where he listened to his compact disc player and sat with Dispatcher Judy Lockwood. (Exhibits A & B; Deposition of Anthony Pezzenti, pp. 9-10, copy attached as Exhibit E).

20. August Pezzenti arrived at the Canton Police Department and Sergeant Krupa advised Mr. Pezzenti of the complaint by Anthony and that Officer Capaldo was presently on the phone with DCF. Sergeant Krupa advised Mr. Pezzenti that they were not going to do anything until DCF arrived. (Exhibit B; Exhibit D, pp. 85-86).

21. Mr. Pezzenti admitted to Sergeant Krupa that it was common for him to strike Anthony with a belt across his rear end. (Exhibit B; Exhibit D, p. 87).

22. Mr. Pezzenti observed upon his arrival at the police station that Anthony had a cut on his lip. (Exhibit D, pp. 99-100).

23. Mr. Pezzenti retained the plaintiff, Attorney John C. Maben, to represent Anthony with respect to this incident. Attorney Maben arrived at the police station and informed Sergeant Krupa that he was there to represent Anthony. He asked to speak with his client and Sergeant Krupa informed Attorney Maben that no one would speak with Anthony until DCF arrived. (Exhibit B; Exhibit D, pp. 62-63).

5

24. Sergeant Krupa was suspicious because Mr. Pezzenti, who was also suspected of possible child abuse, retained Attorney Maben to represent his son. (Exhibit B).

25. Sergeant Krupa asked Attorney Maben for his identification and he showed him his Connecticut Bar Association photo identification card. Attorney Maben indicated that he had represented Mr. Pezzenti prior to September 12, 2002. (Exhibit B; Exhibit D, pp. 62-63; Deposition of John Maben, pp. 42-43, copy attached as Exhibit F).

26. Mr. Pezzenti initially described Attorney Maben as "just a personal friend" whom he had known for approximately ten years, but later admitted that Attorney Maben had represented him in business matters. Attorney Maben represented Mr. Pezzenti with respect to a divorce proceeding and with respect to evictions of tenants from Mr. Pezzenti's rental properties. Attorney Maben, in his capacity as a real estate broker, had also assisted Mr. Pezzenti in renting out his rental property. (Exhibit D, pp. 69-70; Exhibit F, p. 14).

27. Sergeant Krupa advised Attorney Maben to wait in the lobby until DCF arrived. He also informed Attorney Maben that no one would be taking a statement from Anthony until DCF arrived. (Exhibit B; Exhibit D, p. 63).

28. During his employment with the Canton Police Department, Sergeant Krupa has not allowed any attorneys to meet with children in protective custody pending a child abuse investigation by DCF (Exhibit B).

29. According to the police report, Attorney Maben and Mr. Pezzenti met with each other at length many times throughout the evening of September 12, 2002. (Exhibit B; Exhibit F, pp. 53-54).

30. Anthony Pezzenti waited in the dispatch area, which is separated from the lobby where Mr. Pezzenti and Attorney Maben were waiting by bulletproof glass. Both Attorney Maben and Mr. Pezzenti could see Anthony in the dispatch area. (Exhibits A & B; Exhibit D, pp. 59-63; Exhibit E, pp. 10-11; Exhibit F, p. 24)

31. Anthony Pezzenti was not interrogated, interviewed, or asked to sign a statement while being held in protective custody at the Canton Police Department on September 12, 2002. (Exhibits A & B).

32. Mr. Pezzenti left the Canton Police Department around 7:00 p.m. to pick up Mrs. Pezzenti and bring her to the station. He also left the police department around 8:30 to get dinner for Anthony from McDonald's. (Exhibit D, pp. 65-66).

33. Scott Harvey, a social worker with the DCF, arrived at the Canton Police Department after 9:00 p.m. to conduct an interview with Anthony. Mr. Harvey privately interviewed Anthony in the patrol room for approximately twenty minutes. He then spoke with Mr. and Mrs. Pezzenti separately. (Exhibits A & B; Exhibit C, pp. 37-38; Exhibit D, pp. 66-67, 89-90).

34. Mr. Harvey determined that Anthony could return home that evening. Mr. Harvey advised Mr. and Mrs. Pezzenti to discuss another form of discipline other than spanking. (Exhibits A & B; Exhibit C, pp. 38, 41).

35. Officer Capaldo also informed Mrs. Pezzenti that he would be preparing a warrant for her arrest. (Exhibit A; Exhibit D, p. 92).

36. Officer Capaldo applied for an arrest warrant for Mrs. Pezzenti on September 13, 2002, for Breach of Peace. The warrant was issued on September 25, 2002. (Arrest Warrant Application/Affidavit, copy attached as Exhibit G).

37. On October 2, 2002, Mrs. Pezzenti turned herself in after being advised of an active warrant for her arrest and a court date was set for October 3, 2002. (Exhibit A).

38. On October 3, 2002, the court ordered that Mrs. Pezzenti refrain from imposing any restraint upon the person or liberty of Anthony Pezzenti, refrain from threatening, harassing, assaulting, molesting or sexually assaulting Anthony Pezzenti and that Mrs. Pezzenti comply with DCF. (Family Violence Protective Order, copy attached as Exhibit H).

39. Attorney Maben entered into a fee arrangement with August Pezzenti, Jr., with respect to the representation of Anthony Pezzenti on September 12, 2002. Mr. Pezzenti paid Attorney Maben $800.00 for his services on September 12, 2002, despite the fact that Attorney Maben was unable to meet with Anthony Pezzenti prior to the DCF interview. (Exhibit F, p. 32).

40. Attorney Maben continued to represent Anthony Pezzenti with respect to follow up interviews by the DCF. Attorney Maben received payment for these services as well. (Exhibit F, p. 32).

41. Attorney Pete Soulsby, who represented Mrs. Pezzenti with respect to her arrest for Breach of Peace, was allowed to enter the Canton Police Department with his client. (Exhibit F, pp. 22-23).

42. Attorney Maben admitted that Attorney Soulsby was not trying to visit a child being held in protective custody when he entered the Canton Police Department without presenting identification. (Exhibit F, pp. 22-23).

43. Attorney Maben did not know whether Officer Capaldo or Sergeant Krupa took a statement from Anthony Pezzenti on September 12, 2002. Furthermore, he had no information indicating that a statement was in fact taken from Anthony on September 12, 2002. (Exhibit F, p. 37).

44. In fact, the defendants did not interview, interrogate, or take a statement from Anthony Pezzenti while he was in protective custody at the Canton Police Department on September 12, 2002. (Exhibits A & B).

THE DEFENDANTS,
JOSEPH CAPALDO and MICHAEL KRUPA

/s/ Melanie A. Dillon
Melanie A. Dillon, ct24786
Thomas R. Gerarde, ct05640
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (Fax)

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via US Mail to the following counsel of record this 27th day of February, 2004.

John R. Williams, Esquire
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510

/s/ Melanie A. Dillon
Melanie A. Dillon