UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AUGUST PEZZENTI, JR., INDIVIDUALLY, ET AL | : : : | NO.: 3:03CV00419 (MRK) |
| v. | : : | |
| JOSEPH CAPALDO, ET AL | : | February 26, 2004 |

### AFFIDAVIT OF SERGEANT MICHAEL KRUPA

The undersigned, having been duly sworn, do hereby depose and say:

1. I am over eighteen years of age;

2. I believe in the obligation of an oath;

3. I am currently employed by the Town of Canton as a Sergeant of the Police Department;

4. I joined the Town of Canton Police Department on March 7, 1988;

5. I have been employed by the Town of Canton as a Sergeant since April 23, 1998;

6. On September 12, 2002 around 4:30 p.m., Anthony Pezzenti telephoned the Canton Police Department to report that his mother, Elizabeth Pezzenti, hit him;

7. As a result of that call, Officer Joseph Capaldo and I responded to the Pezzenti residence located at 63 Secret Lake Road in Canton, Connecticut;

8. Upon our arrival at the Pezzenti residence, I spoke with Anthony Pezzenti about the incident while Officer Capaldo spoke with Anthony's mother, Elizabeth Pezzenti;

# Exhibit B

9. Anthony explained to me that he was outside blowing leaves and his mother did not like the direction in which he was blowing them;

10. Mrs. Pezzenti sent Anthony to his room. Anthony and Mrs. Pezzenti continued to argue while he was in his room and she slapped him open handed across the face;

11. Anthony stated that he cried and went to his bed, pulled a blanket over his head and said he was going to call the police because she hit him;

12. Anthony stated that Mrs. Pezzenti threw the telephone at him and it him in the mouth causing a cut to his inner lip;

13. I observed the cut on the inside of Anthony's lip;

14. Anthony stated that he sometimes gets along with his parents but he gets hit all the time;

15. Anthony told me that received a demerit at school during the week preceding the incident on September 12, 2002. Upon learning that Anthony had received a demerit, his father, August Pezzenti, Jr., punished him by hitting him ten times with a belt across his rear end;

16. Anthony stated that his parents routinely hit him as a form of punishment;

17. Anthony broke out crying several times during our conversation about what was happening to him;

18. Anthony admitted that he is a "wise guy" sometimes but stated that he doesn't deserve to be hit;

19. I observed that Anthony was of average to above average in politeness for his age and that he could articulate things well. Therefore, I had no reason to doubt what he was telling me;

20. I asked Mrs. Pezzenti when she expected Mr. Pezzenti to come home and she asked me if I were going to take her away;

21. Mrs. Pezzenti told me that Anthony was a "wise guy" and won't listen to her;

22. I explained to Mrs. Pezzenti that we were not going to do anything until we spoke with the Department of Children and Families (hereinafter "DCF");

23. Mrs. Pezzenti stated that she had no idea what time her husband would be home but it would probably be late;

24. I advised Mrs. Pezzenti that we would most likely take Anthony into protective custody because Mr. Pezzenti was not present and that we would investigate the matter further with DCF;

25. I also advised Mrs. Pezzenti that if we decided to make an arrest we would do so by applying for an arrest warrant;

26. Officer Capaldo and I agreed that it would be best to take Anthony into protective custody pending a further investigation of the matter by DCF;

27. I explained to Anthony that we were taking him to the Canton Police Department until DCF arrived to interview him;

28. I transported Anthony in the front seat of my cruiser to the Canton Police Department;

29. Upon our arrival at the police department, I took Anthony into the dispatch room and he sat with Dispatcher Judy Lockwood;

30. Anthony listened to his compact disc player and watched a movie while we waited for DCF to arrive;

31. I did not interview, interrogate or take a statement from Anthony Pezzenti while we were waiting for DCF to arrive and interview him;

32. August Pezzenti, Jr., called the police department at approximately 5:20 p.m. to explain that his son was "only being disciplined" and I attempted to return his call but he did not answer;

33. At approximately 5:40 p.m., Mr. Pezzenti arrived at the Canton Police Department;

34. I informed Mr. Pezzenti of the complaint made by Anthony Pezzenti and advised him that Officer Capaldo had already contacted DCF;

35. I stated that our best course of action was to wait for DCF to arrive and go from there;

36. I also advised Mr. Pezzenti of Anthony's complaint that Mr. Pezzenti had hit him with a belt for demerits at school;

37. Mr. Pezzenti admitted that he hit Anthony with a belt for demerits he received at school and stated that it was common for him to discipline Anthony with a belt across his rear end;

38. At approximately 7:00 p.m., I was informed that Attorney John Maben was in the lobby;

39. Attorney Maben informed me that he was there to represent Anthony;

40. I explained that Anthony was a victim of suspected child abuse and Attorney Maben stated that victims have rights too;

41. I told Attorney Maben that I was suspicious that Mr. Pezzenti, who was also suspected of child abuse, hired an attorney so quickly to represent Anthony;

42. Attorney Maben indicated that he wanted to meet with Anthony and further stated that he didn't even know if Anthony would agree to be represented by him;

43. Due to my suspicions, I informed Attorney Maben that no one would meet with Anthony until DCF arrived;

44. Attorney Maben asked me if I had taken a statement from Anthony yet and I informed him that no one had taken or will take a statement from Anthony until DCF arrived;

45. I asked Attorney Maben for identification and he provided me with his Connecticut Bar Association photo identification card;

46. I asked Attorney Maben if he had ever represented either Mr. Pezzenti or Mrs. Pezzenti before and he stated that he had represented Mr. Pezzenti previously;

47. Attorney Maben stated that it was a violation of Anthony's rights to take a statement from him without his attorney present;

48. I reiterated that no one had taken a statement from Anthony and that no one was interviewing Anthony until DCF arrived;

49. I explained to Attorney Maben that Anthony's safety was our primary concern;

50. I showed Attorney Maben where Anthony was sitting and explained that he could watch him from the lobby;

51. Attorney Maben waited in the lobby with Mr. Pezzenti and they met with each other at length many times throughout the evening;

52. During my employment with the Canton Police Department, I have not allowed any attorneys to meet with children in protective custody pending a child abuse investigation by DCF;

53. At approximately 9:20 p.m., Scott Harvey, a social worker from DCF, arrived at the Canton Police Department and interviewed Anthony and his parents for approximately one hour;

54. Mr. Harvey determined that Anthony could return home that evening.

Dated at Canton, Connecticut, this 27th day of February 2004.

/s/ Michael Krupa
Michael Krupa

STATE OF CONNECTICUT    )
                       ) ss:  Canton
COUNTY OF HARTFORD      )

Subscribed and sworn to before me this 27th day of February 2004.

/s/ Christopher Panioto
Notary Public
My commission expires 03/31/05: