UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AUGUST PEZZENTI, JR., | : | |
| Individually and as next friend of his | : | |
| minor son, ANTHONY PEZZENTI, and | : | |
| JOHN C. MAYBEN | : | NO. 3:03CV419 (MRK) |
| | : | |
| VS. | : | |
| | : | |
| JOSEPH CAPALDO and | : | |
| MICHAEL KRUPA | : | APRIL 11, 2004 |

## BRIEF IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT

This consolidated brief is submitted in opposition to the two motions to dismiss filed on behalf of both defendants.

For the most part, the issues in this case are not in dispute. August Pezzenti, Jr., is the father of a son named Anthony, who at the time of the relevant events was eleven years old. On the date in question, Anthony had been rude and insulting to his mother, who sent him to his room. En route thereto, Anthony continued to be rude and his mother slapped him.

Mr. and Mrs. Pezzenti are Baptists who believe that the Bible instructs them that physically disciplining their children is appropriate under circumstances like these.

1

Anthony, however, telephoned the Canton Police Department and complained that his mother had slapped him. The two defendants were dispatched to investigate. Upon confirming the incident, they took Anthony into custody. Anthony was driven to Canton police headquarters which, although only half a mile away from the Pezzenti home, they did not reach for an hour. The defendants stopped on the way to handle other police matters.

By the time Anthony arrived at headquarters in a police cruiser, frightened and in tears, his father, who had been called at work by Mrs. Pezzenti, already had arrived and was waiting. He attempted to speak with his son, but the defendants refused to allow him to do so, stating that the boy was "in custody" and would be held for an interview by a social worker with the Department of Children and Families.

August Pezzenti telephoned the plaintiff, Attorney John Maben, and retained him to represent his son. Attorney Maben had previously done work for Mr. Pezzenti on unrelated matters but in this incident represented only Anthony and not either of his parents. Attorney Maben arrived soon thereafter. He identified himself to the defendants as Anthony's attorney and asked to speak with his client. The defendants repeatedly refused to permit him to do so. Thereafter, Anthony was held incommunicado – denied access to his attorney and, except for a very brief session

of prayer when defendant Krupa was out of sight, to his father for approximately six hours.

Eventually, a DCF social worker arrived, announced that there was no earthly reason to keep this boy away from his family, and ordered him returned home. Thereafter, perhaps anticipating litigation, the defendants sought and obtained an arrest warrant for Mrs. Pezzenti on a charge of breach of peace. A different attorney was retained to represent her and the charge was nolled on the second court appearance.

This action has been brought on behalf of Anthony Pezzenti, August Pezzenti and Attorney Maben. Anthony alleges false arrest and imprisonment, without a warrant or probable cause, in violation of the Fourth Amendment. August Pezzenti alleges interference with his First, Fourth and Fourteenth Amendment rights of family association, as does his son. Attorney Maben alleges interference with his First and Fourteenth Amendment right to practice his profession.

The defendants have moved for summary judgment. As to Anthony, they claim he was in "protective custody" – a term not defined in the law – and claim they had what they call "probable cause" to do so. They argue that the only controlling case on point is Tenenbaum v. Williams, 193 F.3d 581 (2nd Cir. 1999), *cert. denied*, 529 U.S. 1098 (2000), which they admit is against them. In that case, the Second Circuit held that the warrantless removal of a child from her home after she had

accused her father of sexually assaulting her violated the Fourth Amendment. The defendants here argue that they had better reason for the warrantless seizure of this boy because it was undisputed that his mother had slapped his face. The defendants also argue that Anthony's state law claim of intentional or reckless infliction of emotional distress should fail because their conduct was insufficiently "extreme and outrageous" to render it tortious under that legal theory.

As to August Pezzenti's claim of a violation of his right of family association, the defendants rely on cases addressing temporary seizures of children by social workers for child protection agencies, and not seizures by uniformed police officers. They cite several cases standing for the proposition that seizures of relatively short duration, such as that involved in this case, are permissible so long as the social workers have "a reasonable basis for their finding of abuse." *E.g.*, Kia P. V. McIntyre, 235 F.3d 749, 758-59 (2nd Cir. 2000).

As to Attorney Maben's claim of interference with his constitutionally-protected right to practice his profession, the defendants argue, relying principally on Conn v. Gabbert, 526 U.S. 286 (1999), that the interruption was too brief to be actionable. Attorney Maben also argues that he was treated differently from other attorneys, citing the example of Mrs. Pezzenti's lawyer who was allowed immediate access to his client when she was imprisoned at the same location as her son had been earlier. The defendants assert that Attorney Maben and Mrs. Pezzenti's

lawyer were not similarly situated because Mrs. Pezzenti was not a minor. They also assert that their actions were neither malicious nor unreasonable. They admit that defendant Krupa denied Attorney Maben access on the ground that, in his opinion, Attorney Maben had a conflict of interest since he had previously represented August Pezzenti. They do not address whether the Canton Police ever have evaluated other attorneys for potential conflicts of interest as a condition of allowing them to have access to their imprisoned clients.

As to all constitutional claims, the defendants also assert the affirmative defense of qualified immunity. They argue that none of the rights asserted by the plaintiffs was clearly established at the time, and that in any event their actions were objectively reasonable.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor

of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

Anthony Pezzenti's case must be judged by traditional Fourth Amendment standards. He was taken into custody for a long time, denied access to parent or lawyer, without a warrant. "Typically, the elements of a false arrest claim are said to be: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and, (4) the defendant had no privilege to cause the confinement." Nelson v. City of Cambridge, 101 F. Supp. 2d 44, 48 (D. Mass. 2000) (Gertner, J.), citing Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n. 6 (1st Cir. 1995). Thus, when the chief of police

6

directed a subordinate to take the plaintiff detective against his wishes for an involuntary drug evaluation, an arrest was made.  <u>Russo v. City of Hartford</u>, 184 F. Supp. 2d 169 (D. Conn. 2002).  And when a nursing supervisor at a locked nursing facility in a correctional institution prevented the plaintiff, who was a nurse at the facility, from leaving work despite her desire to seek medical treatment for an illness, an arrest was made.  <u>Barstow v. Shea</u>, 196 F. Supp. 2d 141 (D. Conn. 2002).

"Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant.  At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest.  The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant....If the defendant is unable or refuses to come forward with any evidence that the arresting officers had probable cause and the plaintiff's own testimony does not establish it, the court should presume the arrest was unlawful."  <u>Dubner v. City an County of San Francisco</u>, 266 F.3d 959, 965 (9th Cir. 2001).

"A section 1983 claim for false arrest [is based] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause....The existence of probable cause to arrest constitutes justification

and 'is a complete defense to an action for false arrest,' Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)....In evaluating these matters, we consider the facts available to the officer at the time of the arrest." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997).  Cf., Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002).  "[T]he standard of probable cause 'applie[s] to all arrests, without the need to balance the interests and circumstances involved in particular situations.' Dunaway v. New York, 442 U.S. 200, 208 (1979).

"The Fourth Amendment is not limited to criminal cases, but applies whenever the government takes a person into custody against her will." Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir. 1996).  See Powell v. Texas, 392 U.S. 514, 554 (1968); Anaya v. Crossroads Managed Care Systems, Inc., 195 F.3d 584, 590-91 (10th Cir. 1999); Bisignano v. Harrison Central School District, 113 F. Supp. 2d 591 (S.D.N.Y. 2000) (Connor, J.).

The police had no probable cause to justify taking Anthony into prolonged custody without a warrant merely on the basis that his mother has slapped his face for sassing her.  No case appears ever to have so held.

On the question whether the actions of the defendants in this case were sufficiently "extreme and outrageous" to permit suit on state law grounds, the Connecticut courts have answered affirmatively in similar cases.  The action of a school official in falsely reporting suspected child abuse to the Department of

Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle, No. CV-97-0407047 (N.H. Sup. Ct. 1999) (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 28 Conn. L. Rptr. No. 17, 605 (2001) (Shortall, J.).

August Pezzenti's action for violation of his right of family association is based on the fact that the defendants denied him any access to his son for a period of many hours, on the basis of the fact that (a) his mother had slapped his face in the father's absence and (b) on some unspecified prior occasion the father had applied a belt to the boy's behind because of a bad report from school. Although the period of time in question was about six hours, there was no basis for *any* denial of access to the *father* in the information available to the defendants.

"It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that '[t]he state's interference with that liberty interest without due process of law is remediable under...section 1983.' Kelson v. City of Springfield, 767 F.2d 651, 654-55 (9th Cir. 1985) (citing Santosky v. Kramer, 455 U.S. 745, 753 (1982)). '[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents.' Smith v. City of Fontana, 818 F.2d 1422, 1418 (9th Cir. 1987).... Moreover, 'the First Amendment protects those relationships, including family relationships, that presuppose deep

attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.' Board of Dir. v. Rotary Club, 481 U.S. 537, 545 (1987) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 619-20 (1984)...." Lee v. County of Los Angeles, 240 F.3d 754, 770 (9th Cir. 2001) (police, having arrested plaintiff's adult son, told her they had not and denied any knowledge of his whereabouts).

In Van Emrik v. Chemung County Dept. of Social Services, 911 F.2d 863, 867 (2d Cir. 1990) (Newman, J.), the Second Circuit held: "We believe the Constitution assures parents that, in the absence of parental consent, X-rays of their child may not be undertaken for investigative purposes at the best of state officials unless a judicial officer has determined upon notice to the parents and an opportunity to be heard, that grounds for such an examination exist and that the administration of the procedure is reasonable under all the circumstances." This holding was part of a larger discussion in which the court took it as a given that parents "have some constitutional rights of both a substantive and procedural nature, affording protection against arbitrary state action interfering with their parental custody." 911 F.2d at 865, citing Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977); Santosky v. Kramer, 455 U.S. 745 (1982). In Tenenbaum v. Williams, 193 F.3d 581, 598 (2d Cir. 1999), the court extended van Emrik to gynecological examinations. In Cala-

bretta v. Floyd, 189 F.3d 808, 817-20 (9th Cir. 1999), the court prohibited social workers from conducting or coercing strip searches of small children over parental objection absent either a court order or a true emergency.

In Hurlman v. Rice, 927 F.2d 74 (2d Cir. 1991), the Second Circuit held that a mother could sue state troopers for seizing custody of her children without a pre-deprivation hearing. *Cf*. Roska v. Peterson, 304 F.3d 982 (10th Cir. 2002), holding that the warrantless seizure of plaintiff's child by social workers violated the parent's liberty interest in not being deprived of his family rights without procedural due process. See Gottlieb v. County of Orange, 84 F.3d 511 (2d Cir. 1996) (recognizing the right to sue social services employees for wrongful deprivation of child custody, but finding no violation on the facts of the particular case); Defore v. Premore, 86 F.3d 48 (2d Cir. 1996) (recognizing the right but finding defendants qualifiedly immune); Croft v. Westmoreland County Children and Youth Services, 103 F.3d 1123, 1126 (3d Cir. 1997) (absent "an objectively reasonable suspicion of abuse justifying the degree of interference," a caseworker's ultimatum to child's father to leave the home and have no contact with the child or the child would be seized violated the father's constitutional right to family integrity). "In 1993, it was clear that a parent had a constitutionally protected right to the care and custody of his children and that he could not be summarily deprived of that custody without notice and a hearing, except when the children were in imminent danger." Ram v. Rubin, 118

F.3d 1306, 1310 (9th Cir.1997).  Citing Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991).

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies. ... [I]mminent danger of future harm is required to show exigency."  Whether a case worker had reasonable cause to believe that a true exigency existed is a question of fact to be determined by a jury.  Mabe v. San Bernardino County Dept. of Soc. Serv., 237 F.3d 1101, 1107, 1108 (9th Cir. 2001); Wallis v. Spencer, 202 F.3d 11126, 1138 (9th Cir. 2000).

"Emergency circumstances mean circumstances in which the child is immediately threatened with harm....The mere possibility of danger is not enough. ... If it were, officers would always be justified in seizing a child without a court order whenever there was suspicion that the child might have been abused....The law thus seeks to strike a balance among the rights and interests of parents, children, and the State. ... While there is a sufficient emergency to warrant officials' taking a child into custody without a prior hearing if he or she is immediately threatened with harm,...the converse is also true.  If the danger to the child is not so imminent that there is reasonably sufficient time to seek prior judicial authorization, ex parte or otherwise, for the child's removal, then the circumstances are not emergent; there is no reason to excuse the absence of the judiciary's participation in depriving the

parents of the care, custody and management of their child. if, irrespective of whether there is time to obtain a court order, all interventions are effected on an 'emergency' basis without judicial process, pre-seizure procedural due process for the parents and their child evaporates." Tenenbaum v. Williams, 193 F.3d 581, 594-95 (2d Cir. 1999) (quotation marks and citations omitted).

"[T]he state may not remove children from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse....Moreover, the police cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued...." Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000). A police officer who removed a child from her mother's custody and turned her over to the grandparents, on a false claim that they had custody, was held liable for a substantive due process interference with the mother's relationship with the child, when the grandparents then fled with the child to Morocco. Suboh v. District Attorney's Office, 298 F.3d 81 (1st Cir. 2002).

As to Attorney Maben's claim, the defendants first argue that the right involved is protected only by the Fourteenth Amendment and not by the First Amendment. That is not so clear as the defendants would have it. Attorney Maben had a First Amendment right of association with his client which is one (albeit not the only) appropriate manner of analysis in this case. Winik-Nystrup v. Manufacturers

Life Ins. Co., 8 F. Supp. 2d 157 (D. Conn. 1998) (Arterton, J.), involved an employee discharged for taking a vacation with a friend who worked for a competitor of her employer. The suit arose in the context of a state statute prohibiting private employers from infringing the First Amendment rights of their employees. The court, denying the defendant's motion for summary judgment, noted that there are two forms of association protected by the First Amendment: intimate association and expressive association. Citing Roberts v. United States Jaycees, 468 U.S. 609 (1984). The court noted a paucity of authority about what protection is afforded in the areas where these two concepts overlap, such as dating and what the Seventh Circuit has called "chit-chat": "[B]ecause chit-chat is important to the participants,...the freedom to engage in it is an aspect of liberty protected by the due process clause, along with the freedom to exercise other harmless liberties....[A] law that forbade dating or, for that matter, forbade an off-duty policeman to offer a ride on his motorcycle to a coed -- all of these hypothetical laws would infringe liberty. If arbitrary, they would be deemed to violate 'substantive due process,' the term for the protection that the due process clause has been held to extend to substantive rights not listed in the Bill of Rights. Some of these nonenumerated substantive liberties receive broader protection ... under such rubrics as 'right of privacy,' 'fundamental right,' and 'right of association' in a nonexpressive sense. And sometimes these 'fundamental rights' pop up in the employment setting and when they do it is

14

sometimes suggested -- erroneously in light of Roberts and Stanglin -- that the First Amendment protects nonexpressive association." Swank v. Smart, 898 F.2d 1247, 12151-52 (7th Cir. 1990). Quoted in Wionik-Nystrup at 162. Citing City of Dallas v. Stanglin, 490 U.S. 19 (1989) (holding that an ordinance limiting the use of dance halls to persons between the ages of 14 and 18 did not violate the right of association).

Denying the defendant's motion for summary judgment, the court held that the defendant's attempt to distinguish between the rights of expressive and intimate association, holding that the twain never could meet, was unsupported in both fact and law. Some intimate association also is expressive; and it plainly is not true that intimate association has no constitutional protection. "Dating and other social relationships are worthy of some protection under the first amendment, even though these activities may lack an overt political, religious or educational purpose. We do not limit protection to words that are 'strident, contentious, or divisive,' but extend it to 'quiet persuasion, inculcation of traditional values, instruction of the young, and community service.' Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty. We conclude that dating and other social associations to the extent that they are expressive are not excluded from the safeguards of the first amendment." Ibid., quoting IDK Inc. v. County of Clark, 836 F.2d 1185, 1194 (9th Cir. 1988), and Roberts, supra, 468 U.S. at 636 (O'Connor, J.,

concurring).  Having insufficient information about the details of the relationship between the plaintiff and her friend in the case at bar, and noting that the burden in the case of the summary judgment motion was upon the defendant, the court denied the defendant's motion.

Attorney Maben's right to pursue his profession certainly is a property right protected by due process under the Fourteenth Amendment.  "The right to follow a chosen profession is a property interest protected by the Fifth and Fourteenth Amendments.  See Greene v. McElroy, 360 U.S. 474, 492 (1959); Schware v. Board of Bar Exam'rs, 353 U.S. 232, 238-39 (1957).  State-imposed restrictions on this right must be rationally related to a legitimate state interest." Lange-Kessler v. Dept. of Educ. of State of N.Y., 109 F.3d 137-140 (2d Cir. 1997).  In this case, the defendants denied Attorney Maben the right to represent a particular client on the basis that in their opinion he had a conflict of interest.   To permit such police action would be to grant to law enforcement a power heretofore reserved to the courts and, on occasion, the legislature.  The defendants assert the right, not to delay attorney-client contact while standard police procedures are pursued, but to deny representation on the basis of their own ideas of who should or should not be the attorney for one in custody.  The police have no such power and never have been granted such power by the courts.

The defendants in this case claim the right to decide which attorneys will be allowed to represent which clients. Thus, they admit treating attorneys differently on the basis of their own views regarding conflicts of interest. Attorney Maben was the victim of exactly such arbitrary and irrational distinction. He has a classic case, *inter alia*, of denial of equal protection upon those undisputed facts. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The defendants' claim of qualified immunity must fail upon the very analyses delineated above. "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct...; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations, quotation marks and ellipses omitted). A defendant claiming the benefit of qualified immunity bears the burden of establishing his entitlement to it. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Schechter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Castro v. United States, 34 F.3d 106, 111 (2d Cir. 1994). As discussed above, each right asserted by the plaintiffs was well

established before the events in question occurred.  The conduct of the defendants clearly violated those established rights and certainly no reasonable officer could have thought otherwise under the circumstances.

The motions for summary judgment should be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
Tel: 203-562-9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Plaintiffs' Attorney

**CERTIFICATION OF SERVICE**

On the date above stated, a copy hereof was mailed to Attorneys Melanie A. Dillon and Thomas R. Gerarde at Howd & Ludorf, 65 Wethersfield Avenue, Hartford, CT 06114.

_____
JOHN R. WILLIAMS