UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AUGUST PEZZENTI, JR., INDIVIDUALLY, ET AL | : : : | NO.: 3:03CV00419 (MRK) |
| v. | : : | |
| JOSEPH CAPALDO, ET AL | : | MAY 6, 2004 |

**REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to D. Conn. L. R. 7, the defendants, JOSEPH CAPALDO and MICHAEL KRUPA, hereby reply to the plaintiff's Brief in Opposition to Motions for Summary Judgment dated April 12, 2004.

**A.   THE PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN AT SUMMARY JUDGMENT**

Although the plaintiffs concede that most of the facts are not in the dispute, they "disagree" with paragraphs 9, 10, 11, 19, 21, 24, 25, 26, 28, 31, 42, and 44 of the defendants' Local Rule 56 (a) (1) Statement. Yet, no part of the Local Rules allow for such "disagreement." Pursuant to D. Conn. L. R. 56 (a) (2), the plaintiffs must either admit or deny portions of the Local Rule 56 (a) (1) Statement. Merely disagreeing with portions of a paragraph or the particular terms used is insufficient. Accordingly, paragraphs 19, 21, 25, 26, 42 and 44 should be deemed admitted. *See* D. Conn. L. R. 56 (a).

In ¶9, the plaintiffs "disagree" that Anthony told Sergeant Krupa that he got hit all the time, and refer to pages 24-25 of Mrs. Pezzenti's deposition. Mrs. Pezzenti's testimony, however, fails to dispute that Anthony told Sergeant Krupa he got hit all the time. In fact, on page 27 of her deposition, Mrs. Pezzenti conceded that Anthony said something similar to "I always get hit. None of my friends get hit. I always get hit." (Exhibit C, p. 27). Furthermore, Mrs. Pezzenti admitted that she recalled Anthony telling the police officers that he didn't want to get hit anymore. (Exhibit C, pp. 23-24).

Accordingly, ¶9 should be deemed admitted because the evidence to which the plaintiffs cite does not properly contravene this statement of fact.

The plaintiffs also "disagree" with ¶10 and cite to page 87 of August Pezzenti, Jr.'s deposition, in which he testified that he hit Anthony with a belt for demerits at school. It is unclear what specific portion of ¶10 the plaintiffs are denying. Presumably, the plaintiffs take issue with the portion of the paragraph that indicates Anthony was hit ten times with a belt across the rear end. The defendants contend that a dispute with respect to how many times Anthony was hit with a belt for demerits is not a material fact and, therefore, would not affect the ultimate disposition of the case.

The plaintiffs "disagree" with the alleged "implication" in ¶11 that there is a connection between Anthony's tears and his statements made to Officer Capaldo and Sergeant Krupa and rely on the depositions of Mrs. Pezzenti and Mr. Pezzenti. It should be noted, however, that ¶11 states that "Anthony broke out in tears several times during his conversation with Sergeant Krupa." Moreover, Mrs. Pezzenti admitted at her deposition that Anthony was crying while he spoke with the defendants at their house on September 12, 2002 and explained what happened. (Exhibit C, p. 33). The plaintiffs' "disagreement" is disguised as an implication that Anthony's tears were allegedly related to his fear of the police. This allegation, however, is based solely on Mr. Pezzenti's own interpretation of why Anthony was crying rather than a statement from Anthony about his tears or his alleged fear of the police. Accordingly, ¶11 should be deemed admitted, as the plaintiffs have not fairly denied ¶11.

The plaintiffs also "disagree" with ¶24 on the ground that it is impossible to read Sergeant Krupa's mind. It should be noted that this statement of fact is based on Sergeant Krupa's affidavit and that no one has alleged that Mr. Pezzenti was arrested. Additionally, the plaintiffs did not depose Sergeant Krupa. Furthermore, D. Conn. L. R. 56 (a) (3) provides in relevant part that "each denial in an opponent's Local Rule 56 (a) (2) Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." The plaintiffs have not complied with this rule and therefore, ¶ 24 should be deemed admitted.

The plaintiffs also "disagree" that Sergeant Krupa has not allowed any other attorneys to meet with children in protective custody pending a child abuse investigation by DCF as stated in ¶ 28 of the Local Rule 56 (a) (1) Statement. The plaintiffs cite to the portion of Attorney Maben's deposition in which he testified that Attorney Pete Soulsby, who was escorting Mrs. Pezzenti into the police station in response to a warrant for her arrest, was allowed in the police station without presenting proper identification. This evidence, however, fails to demonstrate that Sergeant Krupa has allowed other attorneys to meet with children held in protective custody pending a DCF interview. Indeed, Attorney Soulsby was escorting an individual into the Canton Police Department who was accused of a crime.  Accordingly, ¶28 should be deemed admitted.

The plaintiff "disagree" with ¶31, yet they agreed with ¶44, which essentially reiterates that the ***defendants*** did not interview, interrogate or take a statement from Anthony while he was in protective custody at the Canton police department. Accordingly, ¶31 should be deemed admitted.

The plaintiffs' Statement of Material Facts is inconsistent to the extent that it conflicts with those facts that the plaintiffs have admitted in Local Rule 56 (a) (1) Statement.  The plaintiff admitted the following facts as stated in the Local Rule 56 (a) (1) statement:  Anthony Pezzenti placed a telephone call to the Canton police Department at approximately 4:30 p.m. (¶4); and the defendants arrived at the Pezzenti residence at approximately 4:53 p.m. and met with Mrs. Pezzenti and Anthony.  (¶7).  In light of these undisputed facts, it would be impossible for Mr. Pezzenti to have received a phone call from his wife at approximately 3:30 p.m., which was one hour prior to Anthony actually placing the phone call to Canton Police Department to report that his mother hit him.  Furthermore, the defendants could not have arrived at the Canton Police Department with Anthony at 4:30 p.m. if they did not even receive the phone call from Anthony until 4:30 p.m. (Local Rule 56 (a) (1), ¶ 4, p.2; Exhibit A).  Additionally, the defendants did not arrive at the Pezzenti household to investigate Anthony's allegations until approximately 4:53 p.m.  (Local Rule 56 (a) (1), ¶ 7, p.2; Exhibits A & B).

Even assuming the court accepts the plaintiffs' Statement of Material Facts in Dispute as true, the defendants contend that the plaintiffs' version of facts does not affect the ultimate disposition of the case. The questions raised by the plaintiffs are neither material nor in dispute. The plaintiffs admit to the events that led up to Anthony placing a phone call to the Canton Police Department on September 12, 2002. The plaintiffs do not deny that Mrs. Pezzenti slapped Anthony and threw or "tossed" a phone at him that afternoon. The plaintiffs also admit that Anthony sustained a cut on his lip as a result of the phone hitting him in the mouth. Additionally, the plaintiffs do not deny that Mr. Pezzenti had previously hit Anthony with a belt for demerits nor do they deny that it was common for Mr. Pezzenti to discipline Anthony with a belt. The defendants maintain that these are the material facts in the case and that they are undisputed.

**B.    THE DEFENDANTS HAD PROBABLE CAUSE TO TAKE ANTHONY PEZZENTI INTO PROTECTIVE CUSTODY**

Although the plaintiffs do not dispute the material facts, they argue on page 8 of their brief in opposition that "the police had no probable cause to justify taking Anthony into prolonged custody without a warrant merely on the basis that his mother has slapped his face for sassing her. No case appears ever to have so held."

The plaintiffs assert that the defendants had no basis upon which to take Anthony into protective custody and even go so far as to dispute that there is such a thing as "protective custody," despite the numerous cases which both parties cite in their briefs that refer to protective custody and/or temporary custody of children whose parents are suspected of child abuse. See, e.g, Berman v. Young, 291 F.3d 976, 979 (7th Cir. 2002); Tenenbaum v. Williams, 193 F.3d 581, 594 (2d. Cir 1999), cert. denied, 529 U.S. 1098 (2000); Gottlieb v. Orange County Dept. of Social Services, 84 F.3d 511, 518 (2d Cir. 1996); Jordan by Jordan v. Jackson, 15 F.3d 333, 350 (4th Cir. 1994). In Jordan, the court explained that there are profound differences between arrest and protective custody and the treatment accorded to children taken into protective custody and adults arrested on suspicion of crime. 15 F.3d at 350.

The plaintiffs have chosen to ignore the readily apparent differences between protective custody of a minor child and an arrest based on suspicion of crime and urge the court to analyze this case in the context of traditional fourth amendment analysis.

4

Rather than relying on case law involving similar allegations of child abuse, the plaintiffs rely on cases in which the plaintiffs were actually arrested and/or detained for reasons completely distinguishable from the facts in the present case.  Essentially, the plaintiffs are asking the court to disregard the material facts upon which the defendants acted and the material facts that demonstrate that this is not a traditional false imprisonment or false arrest claim.

Anthony Pezzenti's Fourth Amendment claim must be analyzed in light of the undisputed material facts, all of which demonstrate that Mrs. Pezzenti slapped Anthony and threw or "tossed" a phone at him, that Anthony sustained a minor cut to his lip after the phone hit him in the mouth, that Anthony called the Canton Police Department for assistance after his mother hit him, and he reported the same to the defendants.  The defendants took Anthony Pezzenti into protective custody based on these allegations of abuse as well as allegations that Mr. Pezzenti hit him with a belt.  The defendants immediately reported the allegations to DCF and DCF responded by sending a social worker to Canton to interview both Anthony and his parents.  The defendants rely on the arguments in their brief in support of Motion for Summary Judgment at pages 7-13, which demonstrates that they had probable cause to take Anthony Pezzenti into protective custody pending further investigation by DCF on September 12, 2002.

**C.  COUNT TWO FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

The plaintiffs rely on two Connecticut Superior Court cases to assert that the actions of the defendants in the present case are sufficiently "extreme and outrageous" to survive a motion for summary judgment.  The defendants contend, however, that the cases upon which the plaintiffs rely are entirely distinguishable from the present case. The plaintiffs even emphasize the primary difference at pages 8-9 of their brief in opposition. In both cases, the defendants allegedly made ***"false"*** reports of child abuse to DCF.

In the present case, however, **there is no allegation that the defendants falsely reported suspected child abuse to DCF**.  Furthermore, the undisputed facts demonstrate that Mrs. Pezzenti admitted that she hit Anthony Pezzenti on September 12, 2002; threw a phone at him, which resulted in a cut to his lip; and that it was

5

common for Mr. Pezzenti to discipline Anthony with a belt across his rear end. The plaintiffs do not deny these facts, nor do they allege that the defendants falsely reported suspected child abuse to DCF. Accordingly, neither Chain v. Biddle, Superior Court, judicial district of New Haven, Docket No. 407047 (March 10, 1999, *Licari, J.*) nor Greco v. Anderson, Superior Court, judicial district of New Britain, Docket No. 501458 (October 23, 2000, *Shortall, J.*), provide support for the plaintiffs' contention that the actions of the defendants constituted extreme and outrageous conduct. To the contrary, the defendants acted entirely appropriately in light of the circumstances and their obligations as mandated reporters pursuant to Conn. Gen. Stat. §§ 17a-101 (b) and 17a-101a. Therefore, the court should grant the defendants summary judgment with respect to Count Two.

**D.    THE DEFENDANTS DID NOT INTERFERE WITH AUGUST PEZZENTI, JR.'S FIRST AMENDMENT RIGHT TO FAMILIAL ASSOCIATION OR HIS FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHT OF FAMILIAL ASSOCIATION**

The plaintiffs fail to assert any arguments with respect to August Pezzenti's claim that the defendants violated his substantive due process right to familial association. The plaintiffs assert on page 9 of their brief in opposition that there was no basis for any denial of access to the father on the information available to the defendants. The plaintiffs follow with approximately four pages of case law without applying the case law to the facts in the present case. Accordingly, the court should consider the claim abandoned and grant the defendant's motion for summary judgment with respect to Count Three. *See*, *e.g*, Taylor v. Rodriguez, 238 F.3d 188, 196-97 (2d Cir. 2001) (claims deemed abandoned where no argument included in appellate brief with respect to those claims).

The majority of cases cited by the plaintiffs in pages 9-13 of their brief deals with procedural due process rather than substantive due process. *See*, *e.g.*, Roska v. Peterson, 304 F.3d 982, 993 (10th Cir. 2002) (plaintiffs asserted that they were deprived of liberty interest in their family relationship when child removed without notice or hearing); Suboh v. D.A.'s Office, Suffolk District, 298 F.3d 81, 91 (1st Cir. 2002) (court focused analysis primarily on the *procedural aspect*, which was most directly implicated by the facts of the case). Other cases cited in this portion of the plaintiffs' brief deal

6

strictly with the issue of qualified immunity of the state actor. *See, e.g.*, Ram v. Rubin, 118 F.3d 1306, 1308 (9th Cir. 1997) (whether social worker and a police officer who removed minor children from the custody of father without prior notice or a hearing are immune from suit); Gottlieb v. Orange County Dept. of Social Services, 84 F.3d 511 (2d Cir. 1996) (addressed both procedural and substantive due process violations of right to familial association in the context of qualified immunity).

It is axiomatic that there is a distinction between procedural due process and substantive due process. *See, e.g.*, Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999) (the court concluded that there was a procedural due process violation *but no substantive due process violation*). The distinction between substantive and procedural due process is significant in the present case because August Pezzenti, Jr., **has only alleged a substantive due process violation of his right to familial association**. (Complaint, Count Three, ¶10). August Pezzenti **does not allege that his procedural due process rights were violated or that he was deprived of his right to familial association when Anthony Pezzenti was removed without prior notice and a hearing**. (Complaint, Count Three). Therefore, the plaintiff cannot rely on the cases concerning procedural due process to support his substantive due process claim.

The facts of the present case demonstrate that the defendants had sufficient information upon which to base their belief that Anthony Pezzenti was in danger and it was in his best interest to remove him from the custody of his parents pending further investigation by the DCF. "An indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody." Ram v. Rubin, 118 F.3d at 1311. The undisputed facts of the present case demonstrate that the defendants had a reasonable belief that Anthony Pezzenti was in imminent danger and this justified his temporary removal.

The defendants also direct the court's attention to the arguments at pages 13-21 of their brief in support of motion for summary judgment and maintain that the brief removal of Anthony Pezzenti from the custody of his parents did not rise to the level of a substantive due process violation.

7

**E.     THE DEFENDANTS DID NOT VIOLATE ATTORNEY MABEN'S RIGHT TO PRACTICE HIS PROFESSION OR HIS RIGHT OF ASSOCIATION**

Rather than analyzing Attorney Maben's claim that the defendants interfered with his First Amendment right to practice his profession in light of the relevant case law, the plaintiffs, strangely, provide the court with a brief synopsis of case law regarding the First Amendment Right to intimate and/or expressive association at pages 13-16. Attorney Maben is apparently asserting for the first time that his right of association under the First Amendment was violated by the defendants' actions. The complaint, however, only alleges that the defendants interfered with Attorney Maben's First and Fourteenth Amendment right to practice his profession. (Complaint, Count Four, ¶10). There is no allegation that Attorney Maben's right to intimate or expressive association was violated. Accordingly, the defendants are entitled to summary judgment with respect to Attorney Maben's First Amendment claims.

The plaintiffs also argue that Attorney Maben's right to practice his profession is a property right protected by due process under the Fourteenth Amendment. For the first time, the plaintiffs claim that Sergeant Krupa's refusal to allow Attorney Maben to meet with Anthony Pezzenti was based on his opinion that there was a potential conflict of interest. The plaintiffs further assert that the police have no power to deny representation based on a conflict of interest and such conduct violated Maben's right to practice his profession.

To the contrary, the defendants did not deny Attorney Maben access to Anthony Pezzenti solely on the basis of a potential conflict of interest. The plaintiffs, however, once again ignore the material facts of the present case. It is undisputed that Anthony Pezzenti was taken into protective custody pending an investigation of child abuse allegations against both Mr. and Mrs. Pezzenti. Anthony Pezzenti was not under arrest nor was he being interviewed or interrogated by the defendants while he waited for DCF to arrive. The defendants made a decision that no one would speak to Anthony until DCF arrived and that decision was applied equally to August Pezzenti, Jr., and Attorney Maben. Furthermore, August Pezzenti, Jr., paid Attorney Maben for his services and Attorney Maben continued to represent Anthony Pezzenti with respect to subsequent

DCF interviews. The plaintiffs do not dispute these facts and, therefore, Attorney Maben was never deprived of his right to practice his profession.

The defendants also rely on pages 7-13 of their brief in support of motion for summary judgment with respect to Maben's claims and maintain that their actions on September 12, 2002 did not violate Attorney Maben's right to practice his profession; therefore, they are entitled to summary judgment with respect to this claim.

**F.   THE DEFENDANTS DID NOT VIOLATE ATTORNEY MABEN'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION**

The plaintiffs argue on page 17 of their brief in one paragraph that the defendants violated Attorney Maben's right to equal protection because the defendants decided that he should not represent Anthony Pezzenti due to a conflict of interest. The defendants, however, did not decide Attorney Maben should not represent Anthony Pezzenti. The defendants determined that no one would speak with Anthony Pezzenti until DCF arrived, including Attorney Maben. The defendants were not by any means asserting a right to decide whether a particular attorney could represent a particular client.

Again, it is undisputed that the defendants took Anthony Pezzenti into protective custody based on allegations of child abuse against his parents and contacted the DCF to report the same allegations. Furthermore, a DCF social worker traveled to Canton to investigate the matter, thereby indicating that these allegations of abuse were not taken lightly. The defendants decided it was in Anthony Pezzenti's best interest to not speak with anyone until DCF arrived, including Attorney John Maben.

Moreover, it is undisputed that Sergeant Krupa has not allowed any attorneys to meet with children in protective custody pending an investigation by DCF. The plaintiffs have not presented any evidence to refute this fact. Accordingly, Attorney Maben's class of one claim fails because he has not produced any evidence demonstrating that he was treated differently from all other attorneys similarly situated.

The defendants are entitled to summary judgment with respect to Attorney Maben's equal protection claim for the reasons stated above as well as all of the

reasons stated at pages 13-19 of their brief in support of motion for summary judgment with respect to Attorney Maben.

**G.     THE DOCTRINE OF QUALIFIED IMMUNITY IS A COMPLETE BAR TO THE PLAINTIFFS' CLAIMS**

Undoubtedly, the defendants are entitled to summary judgment on the ground that plaintiffs' claims are barred by the doctrine of qualified immunity. In opposition, the plaintiffs argue that their rights are clearly established and that the defendants did not act reasonably. The plaintiffs do so without analyzing each of their claims in light of the relevant case law. The plaintiffs cannot merely assert that their rights were clearly established to the extent that the defendants would have had fair warning that their conduct violated the Constitution without citing to specific case law demonstrating the same. Furthermore, the plaintiffs have failed to produce any support for their assertion that the defendants' actions were not objectively reasonable in light of the circumstances with which the defendants were faced on September 12, 2002.

Accordingly, the defendants rely on the case law and legal analysis at pages 21-39 of their brief in support of motion for summary judgment with respect to Anthony Pezzenti and August Pezzenti, Jr., and pages 19-28 of their brief in support of motion for summary judgment with respect to Attorney John Maben, and maintain that they are entitled to summary judgment on the basis of qualified immunity with respect to the plaintiffs' entire complaint.

**H.     CONCLUSION**

For the reasons set forth above and the reasons set forth in their memoranda of law in support of motion for summary judgment dated February 27, 2004, the defendants, JOSEPH CAPALDO and MICHAEL KRUPA, pray the court will grant the their motions for summary judgment with respect to the plaintiffs' entire complaint.

DEFENDANTS,
JOSEPH CAPALDO
AND MICHAEL KRUPA


By___/s/ Melanie A. Dillon_____
   Melanie A. Dillon
   ct24786
   Thomas R. Gerarde
   ct05640
   Howd & Ludorf
   65 Wethersfield Avenue
   Hartford, CT  06114
   (860) 249-1361
   (860) 249-7665 (Fax)
   E-Mail:  tgerarde@hl-law.com

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 6th day of May, 2004.

John R. Williams, Esquire  
Williams and Pattis, LLC  
51 Elm Street  
New Haven, CT  06510

                                             /s/ Melanie A. Dillon  
                                          Melanie A. Dillon